**EASTERN DIVISION**

| | |
|---|---|
| JESSICA M. AMATO  - VESSELS<br>c/o Jessica M Amato - The Living Wo-man<br><br>Plaintiff(s),<br><br><br><br>MR. COOPER MORTGAGE and its agents<br>Its Attorney(s) of Record, et al<br><br>Defendants, | CASE NO. : **1:24  CV  00305**<br><br>PLAINTIFF COMPLAINT FOR, FRAUD IN THE CONCEALMENT, UCC SEC. 3-301, THE NOTE, ALLEGATION and CLAIMS, MEMORANDUM OF POINTS & AUTHORITIES, MORTGAGE ELECTRONIC REGISTRATION SYSTEM aka "MERS", THE MORTGAGE, FRAUD IN THE CONCEALMENT, TRUTH IN LENDING ACT and REAL ESTATE SETTLEMENT PRACTICES ACT 'RESPA', BREACH OF FIDUCIARY DUTY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, DECLARATORY RELIEF, ASSIGNMENT OF MORTGAGE, REQUESTING HEARING IN EQUITY JURY TRIAL DEMAND RESERVE THE RIGHT TO AMEND |

FILED

FEB 16 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

JUDGE OLIVER

MAG JUDGE GRIMES

A.P.K.

04/16/24

Paid # 405.00

Receipt # 150362

**CIVIL COMPLAINT FOR MORTGAGE FRAUD**

**COMES NOW**, Jessica Marie Amato and John Prokop (hereinafter Jessica, John or Plaintiff(s)) proceeding **in propria persona**, and files their civil lawsuit forementioned stated on the property located at 2850 S. Ridge Rd. Perry, Ohio 44081. Plaintiff's demands that their Pro se status be recognized and treated by the Court as The United States Supreme Court, and US District Courts have held such status be recognized and treated. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." **Haines v. Kerner**, *404 U.S. 519, 520-21, 92 S. Ct. 594, 20 I..Ed.2d 652 (1972)*; see also **Estelle v. Gamble**, *429 U.S. 97,106, 97 S.Ct. 285, 292, 50 I.Ed.2d 251 (1976)*; **Gillihan v. Shillinger**, *872 F.2d 935, 938 (10th Cir. 1989)*. "We hold pro se pleadings

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

to a less stringent standard than pleadings drafted by attorneys and construe them liberally". **Tannenbaum v. United States**, *148 F.3d 1262-1263 (11th Cir.1998). "A pro se plaintiff must set forth enough factual allegations to 'nudge [] their claims across the line from conceivable to plausible," or 'their complaint must be dismissed' for failing to state a claim upon which relief can be granted."* **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 569-70 (2007); see also **Aschraft v. Iqbal**, 556 U.S. 662 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).* Plaintiff bring forth facts to support their claim herein.

Plaintiff's are before this court by Special Appearance, without waiving any rights, defenses, statutory or procedural rights and demand this court to Issue an Injunction and Restraining Order pursuant to *Rule 65, (a)(b) (A),* to force the Bank and their attorney(s) the realtors, and the Property Management Companies to cease and decease all potential, pre-foreclosure and eviction efforts until the Courts rules on the Plaintiff's (TRO) and challenge to the Loan accounting entries of the alleged dispute. The Plaintiff's in this matter seeks relief from the defendants Failure To Disclose a plethora of wrongful practices actions.

In this case, defendant(s) has failed to provide the original promissory note that plaintiff's has requested several times to CROSSCOUNTRY MORTGAGE LLC. to verify that there was a debt or provide the loan accounting entries to prove the amount agreed to be paid and the amount that is paid off. ( The plaintiff's several requests were sent certified mail and received by CROSSCOUNTRY MORTGAGE LLC. on and between 9/12/22- 3/31/23. These requests were sent under the authority of the FDCPA, TILA, and RESPA. Under these consumer protection laws the Plaintiff's has the right to request information for full disclosure of the true terms of the alleged agreement and to know who the true party of interest is.) Nothing is or was provided to verify the terms of the alleged breached contract. There is no evidence being offered by defendant that is admissible at trial. The defendant cannot and has not laid the proper foundational proof that it ever maintained a secured interest in the particular property.

## JURISDICTION

This court has jurisdiction over False Claim Act violations filed by citizens pursuant to Title 31, section 3730(b)(1). Title 31, section 3732(a) authorizes nationwide service of process and provides that an action under the False Claims Act "may be brought in any judicial district in which the defendant...can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Jurisdiction

is additionally established by Title 28, section 1331 (violation of U.S. law) section 1348 (a national bank), and section 1347 (collection of any revenue).   Venue is proper in Lake County as the actions complained of occurred in Lake County. This court has jurisdiction over this matter pursuant to 28 USC Ch. 85. These actions which are the basis of this lawsuit, the institution and pursuit of Failure to Disclose associated with wrongful residential mortgage pre-foreclosure threats of foreclosure if payment is not rendered and fraud were committed by MR. COOPER GROUP, hereinafter referred to as Defendant or Mr. Cooper. Jurisdiction is proper "other jurisdiction" where the Constitution, whereby Judicial Power, SECTION authorizes such out of necessity. The Judicial power shall be vested in one Supreme Court, (who may extend such powers in a Court of Appeals, in District Courts, in County Courts, in Metropolitan Courts), and in such other courts and may be established by positive law i.e. equity, as equity is the law, as equity is everything and law without equity must still render equity. Therefore, this court has the power to decree in equity upon the Express Trust matter in-camera/chambers and may enforce the Bill of Rights put forth in this bill as expressed in the Constitution. A civil suit is a table with four legs: two opposing parties (2 legs), Subject Matter Jurisdiction (1 leg), and a Competent Fact Witness(1 leg). If any one of the Legs is missing, the pleading fails to make the prima facie case. "The burden of proof of jurisdiction lies with the asserter." *See McNutt v. GMAC, 298 US 178*. Plaintiff's have met that burden.

 To state a claim under 42 USC 1983 the Plaintiff must allege facts establishing that a state actor had deprived them of a right, privilege or immunity secured by the United States Constitution or statute. *Eldredge v. Town of Falmouth, 662 F. 3d 100, 104 (1st Cir 2011);Tobin v Univ. of Maine Sys., 62 F. Supp 2d 162, 165 (D. Me 1999); 42 USC 1983*. In evaluating a Defendant's Motion to Dismiss, this Court must review the Complaint to determine whether the Plaintiff's have pled "sufficient facts" to show that [they have] a plausible entitlement to relief. *Sanchez v Pereira-Castillo, 590 F3d. 31, 41 (1st Cir. 2009)*(internal citations omitted). The Plaintiffs' factual allegations here are both plausible and well documented and aside from the Defendant's attempt to create a factual dispute about whether Fraudulent Practicing Act is at the forefront on non-payment are essentially admitted by the Defendants by acquiescence. In this case, the Plaintiffs' Complaint more than adequately alleges that the Defendant violated numerous federal laws governing Real Estate Mortgage.


## RULE OF LAW

Whereby this cause, being a complaint in exclusive equity jurisdiction, (as it directly involves the property/estate/securities of the Plaintiff), cites the rule of law as follows upon:

### Bill of Rights

No person's (to include infants/minors) property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and , when

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

taken, except for the use of the State, such compensation shall be first made, or secured by deposit of money.

## <u>BACKGROUND FACTS</u>

1. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 137, inclusive, and therefore sues these defendants by such fictitious names and all persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff(s) title, or any cloud on Plaintiffs title thereto. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

2. Plaintiff files his complaint so that he meets the burden of Proof and Stating a Claim upon relief can be granted. Plaintiffs states their claims as follows:

3. Plaintiffs conducted extensive research with the aid of private Forensic Audit as an expert witness in support of this complaint.

4. Jessica, known as Sureties, issued an Uncertificated Security as a (Accommodation) Promissory Note on June 20, 2019 regarding a purported loan for $299,900.00. Then again with a refinance on March 10, 2020, regarding a purported loan for $294,467.00. The purported Original Lender of both alleged loans is named as "CrossCountry Mortgage, Inc., a Corporation" organized and existing under the laws of OHIO. Lender's address is 401 E. Sonterra Blvd. Ste.120 San Antonio TX 78258.

5. Sureties pledged a Constructive Deed of Trust Security Instrument to grant an alternate means of collections filed against their Superior Claim to Title filed in the Official Records of the (Lake County Recorder's Office on March 26, 2020, MIN: 1007191-0000380215-2 (Exhibit A).

6. The purported mortgaged loan contract[s] between the parties is specific as to the duties of each party. Surety executed the note as the accommodation party for CROSSCOUNTRY MORTGAGE, INC, the accommodated party. After March 10, 2020, CROSSCOUNTRY MORTGAGE as Accommodated party sold its personal property interest in the Plaintiff Accommodate 'Note' and or 'Assignment' as a transferable record Asset-Backed Certificates Trust. Asset-Backed Certificates trust and attempted to sell its personal property security interest in the Plaintiff pledged Constructive Deed of Trust. Thus, breaching their Fiduciary Duty by not complying with the requirements of the Constructive Deed of Trust.

7. The Mortgage is invalid and unenforceable on that it became fully matured on December 10, 2020, or 9 months after. Plaintiffs clearly stated to CROSSCOUNTRY MORTGAGE LLC., that

they were withholding payments until validation/investigation was conducted, Defendants never met that burden (See Exhibit B). Plaintiffs reserves the right to update any Security Agreement signed and filed by Defendants and or its successors.

8. It is now incumbent on this court to query Defendants as to Defendants' lawful position in this instant matter. If Defendants refuse to stipulate in open court that Defendants are the **CREDITOR** in this instant matter, this court must remove Defendants from this hearing forthwith, as this court is here to settle a matter between a **CREDITOR** and a DEBTOR.

9. Accordingly, if Defendants are not the **CREDITOR** in this Matter, then Defendants have thus stipulated that Plaintiff MUST be the **CREDITOR** in this matter.

10. Defendants cannot be the **CREDITOR** in this instant matter as Defendants NEVER risked any assets, nor are Defendants holding any assets.

11. A **CREDITOR** cannot be a **CREDITOR** if they don't hold the asset in question, [*i.e.: the NOTE and/or the property*; and Mortgage Pass-through Trusts, *i.e. R.E.M.I.C., as defined in TITLE 26, Subtitle A, CHAPTER 1, Subchapter M, PART II, §§ 850-862]* cannot hold assets for if they do their tax exempt status is violated and the Trust itself is void *ab initio*.

12. Defendant MUST NOW inform this court, the I.R.S. and the S.E.C. of their status of either being a CREDITOR and/or not being a CREDITOR.

13. Defendant's own acts of fraud upon this court, Plaintiffs, and the public in general are the single cause of this paradox and absent Defendants stating the claim as **CREDITOR,** this court cannot hear from Defendants.

14. By Law and precedent and in accordance with the Supreme Court of the United States *pro se* Pleadings MAY NOT be held to the same standard as a lawyer's and/or attorney's; and whose motions, pleadings and all papers may ONLY be judged by their function and never their form. *See: Haines v. Kerner; Platsky v. CIA; Anastasoff v. United States*; Litigants are to be held to less stringent pleading standards;

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

*See:* Haines v. Kerner, 404 U.S. 519-421; In re Haines: pro se litigants are held to less stringent pleading standards than admitted or licensed bar attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

*See also:* Platsky v. C.I.A., 953 f.2d. 25; In re Platsky: court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings.

*See also:* Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000); In re Anastasoff: litigants' constitutional (guaranteed) rights are violated when courts depart from precedent where parties are similarly situated.

15. For this matter, Defendant is and/or may be the listed Defendant, any and all parties Defendant refuses to reveal to Plaintiffs and/or this Court, irrespective of whether or not said party and/or parties are known to this Court and/or Plaintiffs and/or Defendant, the Corporate *ens legis* entity Defendant is employed by and/or is an officer thereof, and/or any other parity and/or parties, indispensable or not, any and all other party and/or parties receiving any pecuniary gain from, through, and/or by Defendant's fraudulent act(s).

16. Plaintiffs hereby questions the authenticity of ALL dates and/or ALL signatures by ALL parties on ALL documents, including without limitations, notarized documents, "contracts", "deeds", "titles", affidavits, and/or the like, including without limitations the dates and/or signatures by notary publics, officers, employees, and any and ALL parties attesting to any and ALL claims, facts, accounting, transfers, recordings, publications, and/or the like, etc.

17. Plaintiffs disavows any and ALL implied and/or conferred and/or inferred "understanding" of "*legalese*" terms now and at the time of the "signing" of any and ALL of the documents pertaining to this action.

18. Plaintiffs disavows any and ALL presumptions made by this Court, Defendant, and any and ALL other parties when said presumption may be detrimental to Plaintiff's interest and/or case.

19. Plaintiffs hereby demands ALL of Plaintiff's Rights be protected by this Court, including without limitations, State and federal constitutionally protected Rights, God given Rights, Unalienable, Civil Rights, Human Rights, Rights protected by Treaty(s), and/or ALL privileges and/or immunities, and/or the like.

20. Plaintiffs hereby demands this Court refuse to commit, and act to prevent Defendant from committing, any and ALL acts barratrous in nature.

---

21. Plaintiffs hereby demands ALL applicable Rules of Court, Rules of Procedures, Laws, and/or Statutes be adhered to without preference for any party.

## UCC Section 3-301

22. UCC Section 3-301 provides only three ways in which an individual may qualify as the person eligible to enforce a note, two of which require the person to be in possession of the note (which may include possession by a third party that possesses it for the person):

23. The first way a person may qualify as the person eligible to enforce a note will be its "holder." This familiar concept, put down in more detail in UCC Section 1-201(b)(21)(A), requires that the person be in possession of the note and either (i) the note is payable to that person or (ii) the note is payable to bearer. Determining to whom a note is payable requires examination not only of the face area of the note but additionally of any indorsements. This is because the party to whom a note is payable may be changed by indorsement to ensure that, for instance, a note payable to the order of a named payee that's indorsed in blank by that payee becomes payable to bearer.

24. The 2nd way a person may be the person eligible to enforce a note will be a "Non-holder in possession of the [note] who has the rights of a holder." Just how can an individual who is not the holder of a note have the rights of a holder?. This may occur by operation of law beyond your UCC, such as the law of subrogation or estate administration, by what type person may be the successor to or acquires another person's rights.

25. Additionally, it may occur if the delivery of the note to that person is really a "transfer" (as that term is defined in UCC Section 3-203, see below) because transfer of a note "vests in the transferee any right of the transferor to enforce the instrument." Thus, in case a holder (who, as seen above, is really a person eligible to enforce a note) transfers the note to another person, that other person (the transferee) obtains from the holder the right to enforce the note even though the transferee does not end up being the holder (as in the example below). Similarly, See UCC § 1-103(b) (unless displaced by particular provisions of the UCC, the law of, *inter alia*, principal and agent supplements the 64 provisions of the UCC). See also UCC § 3-420, Comment 1

("Delivery to an agent [of a payee] is delivery to the payee."). Note that "delivery" of a negotiable instrument is defined in UCC § 1-201(b)(15) as voluntary transfer of possession.

26. This Complaint does not address the determination of whether a particular person is an agent of another person under the law of agency and the agency law implications of such a determination. "Indorsement," as defined in UCC § 3-204(a), requires the signature of the indorser. The law of agency determines whether a signature made by a person purporting to act as a representative binds the represented person. UCC § 3-402(a); see note 12, supra. An indorsement may appear either on the instrument or on a separate piece of paper (usually referred to as an *allonge*) affixed to the instrument. See UCC § 3-204(a) and Comment 1, par. 4.

27. UCC Section 3-205 contains the rules concerning the effect of various types of indorsement on the party to whom a note is payable. Either a "special indorsement" (see UCC § 3-205(a)) or a "blank indorsement" (see UCC § 3205(b)) can change the identity of the person to whom the note is payable. A special indorsement is an indorsement that identifies the person to whom it makes the note payable, while a blank indorsement is an indorsement that does not identify such a person and results in the instrument becoming payable to bearer. When an instrument is indorsed in blank (and, thus, is payable to bearer), it may be negotiated by transfer of possession alone until specially indorsed. UCC § 3-205(b). See Official Comment to UCC § 3-301. 23 UCC § 3-203(b). Subsequent transfer will result in the following transferee being truly a person eligible for enforce the note.

28. Under what circumstances does delivery of a note qualify as a transfer? As stated in UCC Section 3-203(a), a note is transferred "if it is delivered with a person apart from its issuer for the goal of giving to the person receiving delivery the right to enforce the instrument." Like, think that the payee of a note sells it to an assignee, intending to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee will not qualify as a holder (because the note is still payable to the payee) but, as the transaction between the payee and the assignee qualifies as a transfer, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the individual eligible for enforce it.

29. Thus, the failure to obtain the endorsement of the payee doesn't prevent a person in possession of the note from being the individual eligible for enforce it, but demonstrating that status is more difficult. The reason being the individual in possession of the note must demonstrate the goal of the delivery of the note to it in order to qualify as the individual eligible for enforce. If the note was transferred for value and the transferee does not qualify as a holder because of the lack of endorsement by the transferor, "the transferee has a specifically enforceable right to the unqualified endorsement of the transferor." See UCC § 3-203(c).

30. UCC § 3-309(a)(iii) (1990 text), 3-309(a)(3) (2002 text). The 2002 text goes on to provide that a transferee from the person who lost possession of a note may also qualify as a person entitled to enforce it. See UCC § 3309(a)(1)(B) (2002). This point was thought to be implicit in the 1990 text, but was rejected in some cases in which the issue was raised. The reasoning of those cases was rejected in Official Comment 5 to UCC § 9-109 and the point was made explicit in the 2002 text of Article 3.

31. To prevail the person must establish not only that the person is a person entitled to enforce the note but also the other elements of the maker's obligation to pay such a person. See generally UCC §§ 3-309(b), 3-412. Moreover, as is the case with respect to the enforcement of all rights under the UCC, the person enforcing the note must act in good faith in enforcing the note. UCC § 1-304. Subsequent transfer can lead to the next transferee being a person eligible for enforce the note. Illustration as follows:

a) Maker issued a negotiable mortgage note payable to the order of Payee. Payee is in possession of the note, which has not been indorsed. Payee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3-301(i).

b) Maker issued a negotiable mortgage note payable to the order of Payee. Payee indorsed the note in blank and gave possession of it to Transferee. Transferee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3- 301(i).

c) Maker issued a negotiable mortgage note payable to the order of Payee. Payee sold the note to Transferee and gave possession of it to Transferee for the objective of giving Transferee the

proper to enforce the note. Payee did not, however, indorse the note. Transferee isn't the holder of the note because, while Transferee is in possession of the note, it's payable neither to bearer nor to Transferee. UCC § 1-201(b)(21)(A). Nonetheless, Transferee is really a person eligible to enforce the note. This is because the note was transferred to Transferee and the transfer vested in Transferee Payee's to enforce the note. UCC § 3-203(a)-(b). As a result, Transferee is really a non-holder in possession of the note with the rights of a holder and, accordingly, a person eligible to enforce the note. UCC § 3-301(ii).

d) Same facts as Illustrations 2 and 3, except that (i) underneath the law of agency, Agent is the agent of Transferee for purposes of possessing the note and (ii) it is Agent, rather than Transferee, to whom actual physical possession of the note is written by Payee. In the important points of Illustration 2, Transferee is just a holder of the note and a person eligible to enforce it. In the context of Illustration 3, Transferee is just a person eligible to enforce the note. Whether Agent may enforce the note or mortgage on behalf of Transferee depends partly on what the law states of agency and, in the event of the mortgage, real property law.

e) Same facts as Illustration 2, except that after obtaining possession of the note, lost the note and its whereabouts cannot be determined. Transferee is just a person eligible to enforce the note even though Transferee does not need possession of it. UCC § 3-309(a). If Transferee brings an action on the note against Maker, Transferee must establish the terms of the note and the weather of Maker's obligation on it. The court might not enter judgment and only Transferee, however, unless the court finds that Maker is adequately protected against loss that may occur by reason of a state of another person (such while the finder of the note) to enforce the note. UCC § 3-309(b). See *id*. UCC § 3-309(b) goes on to state that "Adequate protection may be provided by any reasonable means."

<u>**WHO IS THE HOLDER**</u>

32. *CASE LAW IN QUESTION: "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Longan, 83 U.S. 271 (1872)*

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

33. Enforcement of a note always requires that the person seeking to collect show that it is the holder.. A holder is an entity that has acquired the note either as the original payor or transfer by endorsement of order paper or physical possession of bearer paper…"[t]he only person a debtor is obligated to pay is someone who suffers a financial injury, the person who executed any original contract, or who otherwise lent you money."

34. Debt collectors argue that a right to judicial foreclosure is waived in the deed of trust. This is so. BUT it is only waived before the original creditor. It is not waived before a debt collector. Once the alleged loan goes into default and is assigned to a debt collector, the effective law changes. The FDCPA is now the law under which action is governed. The law states; 1692(i) "Venue for debt collection is defined in 15 USC 1692 (i)-any contest over real property must be brought before a judicial court as a judicial action. This means there can be no "non-judicial foreclosure by a debt collector."

35. These requirements are set out in **Article 3 of the Uniform Commercial Code, which has been adopted in every state, including Louisiana, and in the District of Columbia.**. Even in **bankruptcy proceedings, State substantive law controls the rights of note and lien holders,** as the Supreme Court pointed out almost forty (40) years ago in **United States v. Butner**, 440 U.S. 48, 54-55 (1979)..However, as Judge Bufford has recently illustrated, in one of the cases discussed below, in the bankruptcy and other federal courts, **procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure.**. And procedure may just have an impact on the issue of "who," because, if the holder is unknown, pleading and standing issues arise..

36. For a recent FDIC case, see **Liberty Savings Bank v. Redus**, 2009 WL 41857 (Ohio App. 8 Dist.), January 8, 2009.. THE RULES Judge Bufford addressed the rules issue. See **In re Hwang**, 396 B.R. 757 ( Bankr. C. D. Cal. 2008).. First, there are the pleading problems that arise when the holder of the note is unknown.. Typically, the issue will arise in a motion for relief from stay in a bankruptcy proceeding.. According to **F.R.Civ. Pro. 17**, "[a]n **action must be prosecuted in the name of the real party in interest..**"

37. This rule is incorporated into the rules governing bankruptcy procedure in several ways..

38. When the actual holder of the note is unknown, it is impossible – not difficult but impossible – to plead a cause of action in a federal court (unless the movant simply lies about the ownership of the note)..

39. Unless the name of the actual note holder can be stated, the very pleadings are defective. STANDING Often, the servicing agent for the loan will appear to enforce the note..

40. Assume that the servicing agent states that it is the authorized agent of the note holder, which is "Trust Number 99.." The servicing agent is certainly a party in interest since a party in interest in

a bankruptcy court is a very broad term or concept.. See, e.g., <u>**Greer v. O'Dell**</u>, 305 F.3d 1297, 1302-03 (11th Cir. 2002.).

41. However, the servicing agent may not have standing: "Federal Courts have only the power <u>**authorized by Article III of the Constitutions**</u> and the statutes enacted by Congress pursuant thereto.. ... [A] plaintiff must have Constitutional standing in order for a federal court to have jurisdiction.." In re Foreclosure Cases, 521 F.Supp. 3d 650, 653 (S.D. Ohio, 2007) (citations omitted)..

42. But, the <u>**servicing agent does not have standing, for only a person who is the holder of the note has standing to enforce the note**</u>.. See, e.g., <u>**In re Hwang, 2008 WL 4899273 at 8**</u>.. The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder.. See, e.g., <u>**In re Vargas**</u>, 396 B.R. 511 (<u>**Bankr. C.D. Cal. 2008**</u>) at 520.

## <u>PLAINTIFF'S ALLEGATIONS and/or CLAIMS:</u>

I.    Plaintiffs hereby alleges and/or states the claim for which relief can be granted as follows Plaintiff has demonstrated 16 Prongs to illustrate:

1.    Plaintiff is the CREDITOR in this matter.

2.    Defendant is the DEBTOR in this matter.

3.    Defendant is not the CREDITOR, or an ASSIGNEE of the CREDITOR, in this instant matter.

4.    Plaintiff is not the DEBTOR in this matter.

5.    Defendant is not **the Real Party in Interest** in this instant matter.

6.    Defendant did NOT put Defendants' assets at risk in this instant matter.

7.    Defendant may have only "lent credit" in this instant matter.

8.    Defendants purposely destroyed the GENUINE ORIGINAL PROMISSORY NOTE to "securitize" the NOTE.

9.    Defendant's use of *"legalese"* in the mortgage documents as a means of converting Real Property from its true owner to Defendant is a criminal act of "conversion through fraudulent means" and therefore the mortgage  documents are evidence of a criminal act and cannot be used by this Court in this instant matter. *(See: Black's Sixth; "Understand")*

10.   The United States has a primary mortgage Right and/or status on the real property in question and such CANNOT be circumvented by Defendant's fraudulent and unlawful mortgage.

11.   Defendant has been paid in full for the "contract" in question.

---

12. Defendant will fail to join "all indispensable parties" as such joinder would be prima facie evidence of Defendant's fraudulent act of securitizing the "PROMISSORY NOTE."

13. All "investors" involved in the securitization of the "Promissory Note" are indispensable parties to this action and MUST be joined by Defendant in any rebuttal, response, reply, answer, and/or the like by Defendant.

14. Defendant is using a corporate entity and/or TRUST in furtherance of fraudulent acts.

15. Defendant has no immunity for Defendant's fraudulent acts.

16. Defendant is jointly and severally responsible for ALL of Plaintiff's losses, cost fees, and/or damages; *including without limitations*, emotional damages, punitive damages, inclusive of but not limited to: alienation of affection from: spouse, boy and/or girl "friend", friends, children, pets, co-worker(s), client(s), customer(s), and any and all other parties effected directly and or indirectly and/or collaterally even if caused by Plaintiff's inability to deal emotionally with the financial issues; as said issues are and have been caused by Defendant's fraudulent acts.

43. Defendant MUST rebut ANY and ALL ALLEGATIONS and/or CLAIMS with specificity, quoting facts and laws; or Defendant thereby stipulates Defendants agree with Plaintiff's ALLEGATIONS and/or CLAIMS; and Defendants forever forsake arguing against Plaintiff's allegations and/or claims in any court. Merely denying Plaintiff's allegations and/or claims are not sufficient to survive a Motion for Summary judgment against Defendant.

44. Pursuant to *F.R.Cv.P. Rule 8(b)(6)* and/or all allegations and/or claims made by Plaintiff MUST be accepted as true by this Court unless said allegations and/or claims are rebutted with a preponderance of the evidence by Defendant. Any and all such assertion and/or averments presented by Defendant must be *et hoc paratus est verificare* and done under penalty of perjury.

45. Defendant's claim to be the Real Party in Interest is false, fraudulent and unlawful. Pursuant to, *inter alia*, Rule 17(a), Defendant must prove Defendant is the Real Party in Interest, not just claim such.

46. It is a functional impossibility for Defendant to be the Real Party in Interest without the GENUINE ORIGINAL PROMISSORY NOTE. Ergo, it is a functional impossibility for Defendant to prove Defendant is the Real Party in Interest without presenting to this court the GENUINE ORIGINAL PROMISSORY NOTE.

47. It is an incontrovertible fact that Defendant is not in possession of the GENUINE ORIGINAL PROMISSORY NOTE, and accordingly, it is an incontrovertible fact that Defendant is

committing fraud upon the court by falsely and/or fraudulently claiming Defendant is in possession of the GENUINE ORIGINAL PROMISSORY NOTE.

48. Pursuant to law and in accordance with Plaintiff's claims; Defendants MUST present to this court the GENUINE ORIGINAL PROMISSORY NOTE and prove to be the **CREDITOR** in this agreement or agree to Plaintiff's demand for Judgment by Default in favor of Plaintiff.

49. This pleading is supported by the law of the case herein, the prior rulings of this Court herein, the docket of this case, all documents involving Plaintiffs and Defendants, each of which are incorporated by this reference as if fully set forth, and for each of which Plaintiff requests this Court to take Judicial Notice thereof. This pleading is further supported by the accompanying Memorandum of Points and Authorities. Plaintiffs have met its burden of Fed.R.Civ.Pr 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

*Hoang v. Bank of America NA, No. 17-35993 (9th Cir. 2018):*

50. If a creditor fails to make required disclosures under the Truth in Lending Act (TILA), borrowers are allowed three years from the loan's consummation date to rescind certain loans. However, TILA does not include a statute of limitations outlining when an action to enforce such a rescission must be brought. The Ninth Circuit applied the analogous state law statute of limitations -- Washington's six year contract statute of limitations -- to TILA rescission enforcement claims. The panel held that plaintiff's TILA claim was timely under Washington's statute of limitations. In this case, the cause of action arose in May 2013 when the Bank failed to take any action to wind up the loan within 20 days of receiving plaintiff's notice of rescission.

51. The panel also held that the district court improperly denied plaintiff leave to amend the complaint. Court Description: Truth in Lending Act. The panel reversed the district court's dismissal of an action brought by a borrower against Bank of America, N.A., alleging claims under the Truth in Lending Act ("TILA") after the bank declared the borrower in default on a loan and initiated non-judicial foreclosure proceedings. If a creditor fails to make required disclosures under TILA, borrowers are allowed three years from the loan's consummation date to rescind certain loans. *15 U.S.C. § 1635(f).*

52. The borrower sent the bank notice of intent to rescind the loan within three years of the consummation date. The panel held that under *Jesinoski v. Countrywide Home Loans, 135 S. Ct. 790, 792 (2015),* borrowers may affect rescission of such a loan simply by notifying the creditor

of their intent to rescind within the three-year period from the loan's consummation date. The panel further held that because TILA did not include a statute of limitations outlining when an action to enforce such a rescission must be brought, courts must borrow the most analogous state law statute of limitations and apply that limitation period to TILA rescission enforcement claims. The panel held that in Washington, the state's six-year contract statute of limitations was the most analogous statute.

53. The panel rejected the district court's application of TILA's one-year statute of limitations for legal damages claims. The panel also rejected *HOANG V. BANK OF AMERICA* 3 the bank's argument that Washington's two-year catch-all statute of limitations should apply. Because the borrower brought this action within six years, the district court erred in dismissing the TILA claim as time barred. The panel held that the district court improperly denied the borrower leave to amend the complaint. The district court made its determination based on its determination that amendment would be futile because the claims were time- barred.

54. The panel held that because the borrower's TILA rescission enforcement claim was not time-barred, an amendment by the borrower would not be futile. https://law.justia.com/cases/federal/appellate-courts/ca9/17-35993/17-35993-2018-12-06.html

55. Diversity of jurisdiction is present in this matter as the real property in question is in Ohio and Defendant and/or other entities involved are in other states and/or countries. Therefore, Plaintiffs hereby invokes Erie doctrine and will accordingly use Ohio law and/or may use federal laws accordingly.

56. Defendants are committing BARRATRY by fraudulently filing documents only a CREDITOR and the Real Party in Interest may file, when in fact Defendants are NOT the CREDITOR and NOT the Real Party in Interest in this instant matter.

57. It is a functional impossibility for Plaintiffs to "understand" the mortgage documents Defendants used in their unlawful attempt to convert Plaintiff's Real Property to Defendants' possession. Plaintiff's inability to "understand" the "legalese" used by the attorneys who wrote the mortgage documents prohibits Defendants from using said documents as evidence against Plaintiff.

58. In fact, Defendants' *malum in se* act of using "legalese" in a document to unlawfully convert real property is defined in law as "theft through unlawful conversion."

59. Defendants cannot now use said documents to convert said property without said documents being used as prima facie evidence of Defendants' felonious act. This court cannot use evidence of a felonious act to assist a criminal in furtherance of a felonious act.

See: **Black's Law Sixth Edition:**

Understand. To know; to apprehend the meaning; to appreciate; as, to understand the nature and effect of an act. *International-Great Northern R. Co. v. Pence, Tex. Civ.App., 113 S.W.2d 206, 210.* To

have a full and clear knowledge of; to comprehend. Thus, to invalidate a deed on the ground that the grantor did not understand the nature of the act, the grantor must be incapable of comprehending that the effect of the act would divest him of the title to the land set forth in the deed. As used in connection with the execution of wills and other instruments, the term includes the realization of the practical effects and consequences of the proposed act. See Capacity.

Definitions from **Bouvier's Law Dictionary 1856 Edition:**

**BARRATRY**, crimes. In old law French barat, baraterie, signifying robbery, deceit, fraud. In modern usage it may be defined as the habitual moving, exciting, and maintaining suits and quarrels, either at law or otherwise.

1. Inst. 368; 1 Hawk. 243.

2. A man cannot be indicted as a common barrator in respect of any number of false and groundless actions brought in his own right, nor for a single act in right of another; for that would not make him a common barrator.

3. Barratry, in this sense, is different from maintenance (q. v.) and champerty. (q.v.)

CHAMPERTY, crimes. A bargain with a plaintiff or defendant, *campum partire*, to divide the land or other matter sued for between them, if they prevail at law, the champertor undertaking to carry on the suit at his own expense. *1 Pick. 416; 1 Ham.132; 5 Monr. 416; 4 Litt. 117; 5 John. Ch. R. 44; 7 Port. R. 488.*

4. This offence differs from maintenance, in this, that in the latter the person assisting the suitor receives no benefit, while in the former he receives one half, or other portion, of the thing sued for. See *Punishment; Fine; Imprisonment; 4 Bl. Com. 135.*

5. This was an offence in the civil law. *Poth. Pand. lib. 3, t. 1; App. n. 1, tom. 3, p. 104; 15 Ves. 139; 7 Bligh's R. 369; S. C. 20 E. C. L. R. 165; 5 Moore & P. 193; 6 Carr. & P. 749; S.C. 25 E. C. L. R. 631; 1-Russ. Cr. 179 Hawk.P. C. b.1 c.84, s.5.*

6. To maintain a defendant may be champerty. *Hawk. P. C. b. 1, c. 84, s. 8 3 Ham. 541; 6 Monr. 392; 8 Yerg. 484; 8 John. 479; 1 John. Ch. R. 444;, 7 Wend. 152; 3 Cowen, 624; 6 Co@ven, 90*

I.     Defendants are Not the Real Party in Interest in this, and the non-judicial proceeding as current possession of the GENUINE ORIGINAL PROMISSORY NOTE is a requirement for a party to be the Real Party in Interest in all proceedings pursuant to the U.C.C.

Defendant is not and cannot be the Real Party in Interest. Absent possession of the GENUINE ORIGINAL PROMISSORY NOTE signed by Plaintiff; Defendant cannot lawfully move forward with the non-judicial process as the non-judicial court authorities do NOT have subject matter jurisdiction.

II.     Absent prima facie evidence that Defendant is the Real Party in Interest in this and the non-judicial proceeding, Defendant cannot be considered the Real Party in Interest in this and/or the non-judicial proceeding.

     The ONLY acceptable evidence that Defendant may be the Real Party in Interest is the GENUINE ORIGINAL PROMISSORY NOTE. Defendant did NOT present the GENUINE ORIGINAL PROMISSORY NOTE to Jessica (as requested) acting in the non-judicial procedure and therefore the non-judicial procedures claims to jurisdiction are and were fraudulent claims and are thus void.

III.    Absent prima facie evidence that Defendant is the CREDITOR in this and the non-judicial proceeding, Defendant cannot be considered the CREDITOR in this and/or the non-judicial proceeding.

60. The ONLY acceptable evidence that Defendant is the CREDITOR in this instant matter is the GENUINE ORIGINAL PROMISSORY NOTE and the accounting showing the Defendant loaning the Plaintiff the Defendants' assets.  Defendant did NOT put assets at risk in this matter. Defendant did NOT present the GENUINE ORIGINAL PROMISSORY NOTE and the accounting records to the officers acting in the non-judicial procedure and therefore the non-judicial procedure "claims to jurisdiction" are and were fraudulent claims and are thus void.

<u>**MORTGAGE ELECTRONIC REGISTRATION SYSTEM aka MERS**</u>

61. Plaintiffs re-alleges and incorporate herein by reference all previous paragraphs as though fully set forth herein. Generally, one must prove the following to bring a legally sufficient claim of Bifurcation amongst others.

62. Plaintiffs are informed and believe that directly after CROSSCOUNTRY caused Mortgage Electronic Registration Systems ("MERS") to go on title as the "Nominee Beneficiary" this is routinely done in order to hide the true identity of the successive Beneficiaries when and as the loan was sold.  MERS, however, acted as if they were the actual beneficiary although a Nominee is an entity in whose name a security is registered through true ownership is held by another party, in other words MERS is not the Beneficiary but is used to hide the true identity of the Beneficiary.  Based on this failure to disclose, and the lack of consideration paid by MERS, Plaintiffs allege that the Deed of Trust were never perfected and are a nullity as the MERS recording separates the Debt from the Lien, and this is more so especially upon a sale of the Note and Trust Deed.

63. MERS can file a "Notice of Assignment" of the "Security Instrument" but MERS cannot
negotiate the Negotiable Instrument since MERS never came into possession of the Negotiable
Instrument with Plaintiff. The fact here that MERS assigned the Security Instrument verifies that
bifurcation (separation) of the Security Instrument from the Negotiable Instrument has taken
place. Since this was done, the Negotiable Instrument no longer has a "Secured" status and as
such the Negotiable Instrument is now an "Unsecured" Indebtedness.

64. Local Laws of Recordation require the recording of the "Notices of Assignments" that reflect the
negotiation of the Negotiable Instrument, but failure to file in public records does not render the
Negotiable Instrument invalid. The failure to file establishes bifurcation of the Security
Instrument from the Negotiable Instrument and renders the Security Instrument a nullity. The
assignment of the mortgage, without an assignment of the debt, is a nullity. *"The note and
mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the
note carries the mortgage with it, while an assignment of the latter alone is a nullity."* Id. **Van
Burkleo v. Southwestern, Tex. Civ. App., 39 S.W. 1085, 1087; Sheldon v. Sill**, 49 U.S. 441
(1850) 49 U.S. 441: *"The assignment of the mortgage, without an assignment of the debt, is a
nullity."* See... **Kirby v. Williams**, 230 F.2d 330 (United States Court of Appeals Fifth Circuit)
February 10, 1956, Once there is nullity of the Security Instrument it can never be regained as the
Negotiable Instrument has been rendered to be an "Unsecured" Indebtedness.

65. The link between the Negotiable Instrument and the Security Instrument can be proved up by
following the Uniform Commercial Code or the states equal by showing the properly filed chain
of Endorsements. This might possibly prove "Holder/Holder In Due Course" status, and if such is
proved up then possibly there is a method to achieve a legal collection action of a money
judgment but the right to trigger a foreclosure contained within the Security Instrument is out of
reach. Inevitably, in all of MERS actions, the venerable maxim *"nemo dat quod non habet,"* i.e.,
one cannot give what one does not have, must come into play. See **Mitchell v. Hawley**, 83 U.S.
544, 550 (1872); **Chase v. Sanborn**, 5 F. Cas. 521, 523 (Clifford, Circuit Justice, C.C.D.N.H.
1874) (No. 2,628).

66. The home-loan industry has had a central electronic database since 1997 to track mortgages as
they are bought and sold.. It's run by Mortgage Electronic Registration System, or MERS, a
subsidiary of Vienna, Virginia based MERSCORP Inc., which is owned by mortgage companies
and Banks.. No Tracking Mechanism MERS has 3,246 member companies and about half of
outstanding mortgages are registered with the company, including loans purchased by
government-sponsored entities Fannie Mae, Freddie Mac and Ginny Mae, said R.K. Arnold, the
company's CEO.. For about half of U.S. mortgages, there is no tracking mechanism.. MERS does
not keep any original mortgage Notes or contract securities due to the originals to be destroyed
through securitization.

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

67. MERS rules don't allow members to submit lost-note affidavits in place of mortgage notes,
    Arnold said.. "A lot of companies say the note is lost when it's highly unlikely the note is lost,"
    Arnold said.. "Saying a note is lost when it's not really lost is wrong." Lents' attorney, Jane
    Raskin of Raskin & Raskin in Miami, said she has no idea who owns Lents' mortgage note..
    "Something is wrong if you start from what I think is the reasonable assumption that these banks
    are not losing all of these notes," Raskin said.. "As an officer of the court, I find it troubling that
    they've been going in and saying we lost the note, and because nobody is challenging it, the
    foreclosures are pushed through the system."

68. **In Landmark National Bank v. Kesler, 2009 Kan. LEXIS 834**, the Kansas Supreme Court held
    that a nominee company called MERS has no right or standing to bring an action for foreclosure..
    MERS is an acronym for Mortgage Electronic Registration Systems, a private company that
    registers mortgages electronically and tracks changes in ownership.. The significance of the
    holding is that if MERS has no standing to foreclose, then nobody has standing to foreclose – on
    60 million mortgages..

69. That is the number of American mortgages currently reported to be held by MERS.. Over half of
    all new U.S. residential mortgage loans are registered with MERS and recorded in its name..
    Holdings of the Kansas Supreme Court are not binding on the rest of the country, but they are
    dicta of which other courts take note; and the reasoning behind the decision is sound.. Eliminating
    the "Straw Man" Shielding Lenders and Investors from Liability, The development of
    "electronic" mortgages managed by MERS went hand in hand with the "securitization" of
    mortgage loans – chopping them into pieces and selling them off to investors..

70. In the heyday of mortgage securitizations, before investors got wise to their risks, lenders would
    slice up loans, bundle them into "financial products" called "collateralized debt obligations"
    (CDOs), ostensibly insure them against default by wrapping them in derivatives called "credit
    default swaps," and sell them to pension funds, municipal funds, foreign investment funds, and so
    forth.. Banks still do this securitization process.. There were many secured parties, and the pieces
    kept changing hands; but MERS supposedly kept track of all these changes electronically.. MERS
    would register and record mortgage loans in its name, and it would bring foreclosure actions in its
    name.. MERS not only facilitated the rapid turnover of mortgages and mortgage- backed
    securities, but it has served as a sort of "corporate shield" that protects investors from claims by
    borrowers concerning predatory lending practices..

71. California attorney Timothy McCandless describes the problem like this: "[MERS] has reduced
    transparency in the mortgage market in two ways.. First, consumers and their counsel can no
    longer turn to the public recording systems to learn the identity of the holder of their note.. Today,
    county recording systems are increasingly full of one meaningless name, MERS, repeated over

and over again.. But more importantly, all across the country, MERS now brings foreclosure proceedings in its own name – even though it is not the financial party in interest..

72. This is problematic because MERS is not prepared for or equipped to provide responses to consumers' discovery requests with respect to predatory lending claims and defenses.. In effect, the securitization conduit attempts to use a faceless and seemingly innocent proxy with no knowledge of predatory origination or servicing behavior to do the dirty work of seizing the consumer's home... So imposing is this opaque corporate wall, that in a "vast" number of foreclosures, MERS actually succeeds in foreclosing without producing the original note – the legal sine qua non of foreclosure – much less documentation that could support predatory lending defenses.." The real parties in interest concealed behind MERS have been made so faceless; however, that there is now no party withstanding to foreclose..

73. The Kansas Supreme Court stated that MERS' relationship "is more akin to that of a straw man than to a party possessing all the rights given a buyer.." The court opined: "By statute, assignment of the mortgage carries with it the assignment of the debt Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable..

74. The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose unless the holder of the deed of trust is the agent of the holder of the note.. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default.. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation..

75. The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.." [Citations omitted; emphasis added.] MERS, as straw man, lacks standing to foreclose, but so does original lender, although it was a signatory to the deal.

76. The lender lacks standing because title had to pass to the secured parties for the arrangement to legally qualify as a "security."

77. ***The lender has been paid in full and has no further legal interest in the claim.. Only the securities holders have skin in the game; but they have no standing to foreclose, because they were not signatories to the original agreement..***

78. They cannot satisfy the basic requirement of contract law that a plaintiff suing a written contract must produce a signed contract proving he is entitled to relief..

## THE MORTGAGE

### The Mortgage

79. The Mortgage was executed on March 10, 2020. The parties are Jessica M. Amato, the borrower, John E. Prokop, the co-borrower, CrossCountry Mortgage, LLC, the originating lender and Mortgage Electronic Registration Systems, Inc. (MERS) which is named as nominee for the lender and mortgagee. This instrument secures the debt of the borrowers to the lender including interest thereof. The mortgaged property is located at 2850 South Ridge Road, Perry OH 44081. It belongs in the jurisdiction of Lake County.

This Mortgage was recorded in Lake County on March 17, 2020 (Exhibit C).

### Mortgage

80. A mortgage is a legal document by which the owner transfers to the lender an interest in real estate to secure the repayment of a debt, evidenced by a mortgage note. When the debt is repaid, the mortgage is discharged, and a satisfaction of mortgage is recorded with the register of deeds in the county where the mortgage was recorded. West's Encyclopedia of American Law. Mortgage, Retrieved August 25, 2014, from http://legal dictionary.thefreedictionary.com/mortgage

### Parties in a Mortgage

81. The party who borrows the money and gives the mortgage (the debtor) is the mortgagor; the party who pays the money and receives the mortgage (the lender) is the mortgagee. The mortgage must be executed according to the formalities required by the laws of the state where the property is located. It must describe the real estate and must be signed by all owners, including non-owner spouses if the property is a homestead. Some states require witnesses as well as acknowledgement before a Notary Public.

82. The mortgage note, in which the borrower promises to repay the debt, sets out the terms of the transaction: the amount of the debt, the mortgage due date, the rate of interest, the amount of monthly payments, whether the lender requires monthly payments to build a tax and insurance reserve, whether the loan may be repaid with larger or more frequent payments without a prepayment penalty, and whether failing to make a payment or selling the property will entitle the lender to call the entire debt due. West's Encyclopaedia of American Law, Mortgage, Retrieved August 25, 2014, from http://legal-dictionary.thefreedictionary.com/mortgage

### Security Interest

83. A security interest arises when, in exchange for a loan, a borrower agrees in a security agreement that the lender (the secured party) may take specified collateral owned by the borrower if he or she should default on the loan. Secured Transaction Law: An Overview, Retrieved August 25, 2014, from http://www.law.cornell.edu/wex/secured_transactions

**Secured Transaction**

84. A secured transaction is defined as any loan or credit in which property is pledged as security in the event payment is not made. Hill, G. and Hill, K. Secured Transaction, Retrieved August 25, 2014, from http://legal-dictionary.thefreedictionary.com/secured+transaction

**Mortgage, Governing Law**

85. In the United States, the law governing secured transactions in general and mortgages in particular is Article 9 of the Uniform Commercial Code. UCC Article 9 – Secured Transactions, Retrieved August 25, 2014, from http://www.law.cornell.edu/ucc/9

## FRAUD IN THE CONCEALMENT

86. Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Generally, one must prove the following to bring a legally sufficient claim of Fraudulent Concealment.

Concealed or suppressed a material fact;

    a. Had knowledge of this material fact;

    b. That this material fact was not within reasonably diligent attention, observation, and judgment of the plaintiffs;

    c. That the defendant suppressed or concealed this fact with the intention that the plaintiffs be misled as to the true condition of the property; and

    d. That the plaintiffs was reasonably so misled; and

    e. That the plaintiffs suffered damage as a result.

87. Defendants, Mr. Cooper concealed the fact that they were not a depository bank. The purported lender claims to have accepted the issuer Plaintiff' negotiable instrument as debtor in a deposit account; Defendant, Mr. Cooper furthered their deception by purporting to have given consideration for the Plaintiff's accommodation negotiable instrument in the form of real money purportedly executing an underlying obligation (indebtedness) between the parties to the contract.

88. Defendant, Mr. Cooper concealed in the presentation of the terms of the Deed of Trust contract(s) a cross acceptance of which the Sureties, the issuers of the negotiable instrument, would accept

ownership of the real property collateral for executing an accommodation negotiable instrument on behalf of Mr. Cooper the accommodated party for the purpose of a material variation to the purported contract in which the Borrowers would be acting as surety for Mr. Cooper the accommodated party to use Sureties' accommodation parties promise to put the accommodated into funds as surety and a personal property security interest in the sureties' pledged security instrument as collateral for the purpose of negotiating a personal property (payment intangible) transaction with Mr. Cooper for a service release premium without recourse to be received through a table funded transaction at the closing of the purported loan.

89. Defendant, Mr. Cooper concealed a third party Securitizer as well as the terms of the Securitization Agreement, including, *inter alia*: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, the true character of the purported loan in this way had a material effect on Plaintiffs that was known by Defendant Mr. Cooper but not disclosed. Defendant, Mr. Cooper, knew or should have known that there was no meeting of the minds between the issuer Sureties and the purported depository bank or lender Mr. Cooper, regarding the true character of the purported loan and that most importantly it created no underlying obligation between the parties to the contract.

90. Defendant, Mr. Cooper knew or should have known that had the truth been disclosed, Sureties would not have pledged a security agreement to Mr. Cooper the accommodated party for the purpose of an alternate means of collection.

91. Defendant, Mr. Cooper intended to induce Sureties based on these material misrepresentations and improper disclosures.

92. Plaintiffs and Sureties reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Sureties could have been alerted to issues of concern. Plaintiffs and Sureties would have known of Defendant's true intentions and profits from the proposed purported loan. Plaintiff and Sureties would have known that the actions of Defendant, Mr. Cooper would have an adverse effect on the value of Plaintiffs and Sureties home by clouding the title.

93. Defendants' failure to disclose the material terms of the transaction induced Sureties to enter into the purported loan and accept the Services as alleged herein.

Defendants were aware of the misrepresentation and profited from them.

94. As a direct and proximate result of the misrepresentations and concealment, Plaintiffs has been damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to

Plaintiff's financial security, emotional distress, and Plaintiff incurred costs, attorney's fees, and forensic research.

95. Defendant, Mr. Cooper is guilty of malice, fraud and / or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.  The law clearly states that [you], the borrower, can back out of or resend the Purchase without loss of any FRN Money, but no one disclosed this fact to Plaintiffs...NON-DISCLOSURE= NOTARY AND BANK FRAUD.. Fraud vitiates all contracts null and void, even  Court judgments and has no expiration date.

**Fraud**

96. A false representation of a matter of fact – whether by words or by conduct, by false or misleading allegations, or by concealment of what should have been disclosed – that deceives and is intended to deceive another so that the individual will act upon it to her or his legal injury.

97. Fraud is commonly understood as dishonesty calculated for advantage. A person who is dishonest may be called a fraud. In the U.S. legal system, fraud is a specific offense with certain features. Fraud is most common in the buying or selling of property, including real estate, Personal Property, and intangible property, such as stocks, bonds, and copyrights. State and federal statutes criminalize fraud, but not all cases rise to the level of criminality.

**98.**  Prosecutors have discretion in determining which cases to pursue. Victims may also seek redress in civil court. Fraud must be proved by showing that the defendant's actions involved five separate elements: (1) a false statement of a material fact,(2) knowledge on the part of the defendant that the statement is untrue, (3) intent on the part of the defendant to deceive the alleged victim, (4) justifiable reliance by the alleged victim on the statement, and (5) injury to the alleged victim as a result. Fraud, Legal Dictionary, Retrieved December 9, 2015. http://legal-dictionary.thefreedictionary.com/fraud   Penalties for Notary Misconduct, Crimes and Deeds A notary who issues false certificates, and this could include backdated certificates would be guilty of a misdemeanor. A false Acknowledgment certificate constitutes forgery. Additionally, the notary could have their commission revoked if found guilty of this crime, with an additional fine of $1500 per incident. 123Notary, Retrieved January 4, 2016. http://blog.123notary.com/?p=2067

## Affirmative Defenses

**Breach of Contract**

**99.** Definition: An accord and satisfaction is a legal contract whereby two parties agree to discharge a tort claim, contract, or other liability for an amount based on terms that differ from the original amount of the contract or claim. Accord & satisfaction.

**Accord & Satisfaction**

100. Requires a mortgage which is paid in full. Proof which is the assignment of mortgage. Once the mortgage is paid in full, the mortgage has to be transferred back into the original owners name free and clear.

101. Technically speaking according to this provision, the mortgage loan/lien has been paid in full. When a mortgage is sold to another company, the mortgage lien has been technically satisfied. The originating lender must put the property title back into the homeowners name. Provision 23 in the mortgage contract document states the following The highlighted wording here is "Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument." The "payment of all sums" was received when the loan was sold according to the assignment filed below on the property with MERS involved. This this loan was "sold". Paid in full.

102. Thus, this loan has been satisfied in full. An accord and satisfaction has occurred on this mortgage loan with the assignment on record using the actual documents themselves are proof. Thus, this loan should be adjusted from the property, or proper negotiations must be given to redo the terms, balance of this loan.

· *The loan should be placed back into the homeowners name and the lender should back away of any baseless claims they are making for enforcement of this loan. Since it has been paid off technically.*

· *Lender must release this security instrument using the verbiage of the lenders own contract on the mortgage loan contract*

· *Any foreclosure proceedings against the property in question are completely fraudulent and must be halted and voided immediately.*

## **TRUTH IN LENDING ACT & RESPA**

Plaintiff re-alleges and incorporate by reference all paragraphs as though fully set forth herein.

103. The actions of Defendants, as set forth herein, has resulted in the Plaintiffs being forced, tricked, and misled into parting with their property.

Generally, one must prove the following to bring a legally sufficient claim of Implied Contract.

    a.   Undue Influence;

    b.   Duress;

    c.   Unequal Bargaining Power

    d.   Unfair Surprise; and

    e.   Limited Warranty

    f.   Prove Up the Note / Loan

104. Defendant, Mr. Cooper present in the origination of the purported loan that specific criteria such as FICO score and other industry standard underwriting requirements must be met in order to qualify for a loan of money for the subject property from Mr. Cooper.

105. Defendant, Mr. Cooper presented in the origination of the purported loan that a preliminary signature on the mortgage loan contract[s] was required in order to "lock in" an interest rate regarding the terms of the purported loan.

106. Defendant, Mr. Cooper failed to clarify in the terms of the mortgage loan contract[s] that Mr. Cooper the purported lender on the contract[s] was not the party giving consideration for the purported loan; rather Mr. Cooper concealed they were financially benefitting by bargaining with a third party to finance the loan via a wire funds transfer in order to fund the purported loan at the closing using a warehouse line of credit from Mr. Cooper.

107. Defendants knew or should have known that through a consciousness of innocence the Plaintiff were at a special disadvantage when attempting to grant an alternate means of collection via the Constructive Deed of Trust to Mr. Cooper.

108. Plaintiffs have in fact conducted an outside private resource to specify its claim. This application has been audited for the purpose of determining violations of Truth in Lending Act [16 U.S.C. § 1601] ("TILA"), Home Ownership Equity Protection Act [12 C.F.R. 226.32 et seq.] ("HOEPA"), Real Estate Settlement Procedures Act [12 U.S.C. § 2601], and to the extent applicable, violations of other state and federal laws, certain predatory lending practices, and compliance issues.

109. The Real Estate Settlement Practices Act (RESPA) of 1974 is a response by Congress to perceived abuses in the real estate settlement process. It is an attempt to protect consumer(s) from unnecessarily high settlement charges resulting from certain abuses.

110. The Real Estate Settlement Practices Act of 1974 is in governance and applies to any "federally related mortgage loan" (excluding loans for temporary financing such as a construction loan that is secured by a first or subordinate lien on residential property, including individual units of condominiums and cooperatives) 12 U.S.C.A. § 2602(1) (A). It also applies to any whole or

partial loans by any lender with deposits or accounts that are insured by a federal agency and/or a lender that is regulated by the federal government 12 U.S.C.A. § 2602(1) (B) (i).

**Missing Documents**

111. The documents missing and final disclosure documents, including but not limited to:

Per RESPA (Real Estate Settlement Procedures Act- 12 USC 2601 et seq.)

❖ **Affiliated Business Arrangement Disclosure**

❖ **Servicing Disclosure Statement**

❖ **Escrow Account Disclosure** Per ECOA (Equal Credit Opportunity Act- Reg B - 12 CFR 202):

❖ **Initial signed & dated Uniform Residential Loan Application (1003)** Per FCRA (Fair Credit Reporting Act- 15 USC 1681):

❖ **Disclosure of Credit Scores**

❖ **Notice to Home Loan Applicant**

112. As per both state and federal laws that are mandated for initial disclosures, we noted below that initial disclosure documentation was not found nor provided nor included in this file. 10. If the broker failed to deliver that initial disclosure to the borrower, then it becomes incumbent for the lender to ensure and confirm that these disclosures were delivered to the borrower on time. If the lender failed to provide these disclosure documents to the borrower within three (3) working or business days for the original date of loan application, then the borrower must complete a sworn statement testifying to that effect.

113. Notice Of Right To Cancel TILA (Truth In Lending Act, 15 USC Section 1601 et seq; 12 CFR Part 266) allows three (3) days to review Disclosure Documents. The referenced "Three Day Right To Cancel" must have a trigger to begin. That trigger is, when the Lender has provided the Borrower with ALL of the required Disclosures under TILA, and that the same are true, complete, accurate, and timely provided.

114. Being as the entire loan/mortgage process and Mortgage Note referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment and fraudulent misrepresentation, the Borrower has other recourse, right, and cause of action under numerous State and Federal statutes.

115. Pursuant to the United State Supreme Court's decision in Jesinoski v. Countrywide Home Loans, Inc. (2015), 135 S.Ct. 790, TILA gives me, as a borrower, the right to rescind the subject loan until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under TILA. I am hereby notifying you, as the creditor, of my intention to do so as you and/or your predecessors have failed to satisfy the TILA disclosure requirements, including but not limited to delivery of a written document to me explaining my rights at the time of the transaction.

116. Plaintiffs concurrently states that, to this date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been complied with can the "3 DAY RIGHT TO CANCEL" period begin. If the required full Disclosures have not been provided, then the period in which to CANCEL is extended for up to three (3) years, or until Lender moves to foreclose. The records thus far evidence that Borrower has requested to cancel within the three (3) year stipulated time period, while still waiting to receive all truth-in-lending disclosures as required by Federal Law, the same of which has never been received.

117. A close perusal, and audit of Borrower's note/loan documents have revealed certain Disclosure Violations, and that the Borrower has the remedial right and remedy pursuant to UCC 1-201 (32) (34), inter alia, to invoke their Right Of Rescission (ROR), as further evidenced by the original NOTICE OF RIGHT TO CANCEL. This complaint shall and will constitute NOTICE to all Lender(s), Successor(s), and Beneficiaries assigned, and/or appointed.

118. After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s), and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to the Borrower, as well as any money/funds given to any person or fiction in law/entity in connection with said transaction.

119. In accordance with both State and Federal law or until Lender complies, Borrower may retain the proceeds of the transaction. If it should be "impractical", or "Unfair" for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered, then he/she/they may offer its "Reasonable Value".

120. In the event that the Lender should fail or refuse to return the Borrower's money offer within twenty (20) days, the Borrower may then regain/acquire all rights to clear title and reconveyance under Federal law, State Statutes, Uniform Commercial Code, and provisions of TILA, with the same being supported by the evidence of both public and bank records, and further as attached hereto.

---

121. Additionally, Borrower has the right to offer Lender a Reasonable Value. However, the penalties a bank can face for violations of TILA, and other State and Federal law can be as much as triple the damages, i.e., triple the amount of the interest the bank stood to fraudulently make off the mortgage/loan transaction. Therefore, the Borrower(s) hereby in good faith makes the following offer: Borrower will forgive Bank/Lender any liability incurred by its wrongful actions, provided Bank/Lender rightfully forgive Borrower(s) the full amount of mortgage/credit the Bank/Lender fraudulently alleged to have given. In addition, Borrower(s) make the one-time demand $1, 250,000.00 for any loss, damage, and injury he/she/they have sustained; and that Bank/Lender also immediately remove any/all negative comments on Borrower's credit report attributed to this transaction.

**Regulation Z:**

122. Regulation Z (12 CFR 226) implements the Truth in Lending Act (TILA) (15 USC 1601 et seq.), which was enacted in 1968 as title I of the Consumer Credit Protection Act (Pub. L. 90-321). Since its implementation, the regulation has been amended many times to incorporate changes to the TILA or to address changes in the consumer credit marketplace. During the 1980s, Regulation Z was changed significantly, first in connection with the Truth in Lending Simplification and Reform Act of 1980.

123. In 1981, all consumer leasing provisions in the regulation were transferred to the Board's Regulation M. During the late 1980s, Regulation Z was amended to implement the rate limitations for home-secured loans set forth in section 1204 of the Competitive Equality Banking Act of 1987 and to require disclosures for adjustable-rate mortgage loans. Other Regulation Z amendments implemented the Fair Credit and Charge Card Disclosure Act of 1988 and the Home Equity Loan Consumer Protection Act of 1988, which required disclosure of key terms at the time of application.

**Purpose of the TILA and Regulation Z**

124. The Truth in Lending Act is intended to ensure that credit terms are disclosed in a meaningful way so that consumers can compare credit terms more readily and more knowledgeably. Before its enactment, consumers were faced with a vast array of credit terms and rates. It was difficult to compare loans because the terms and rates were seldom presented in the same format. Now, all creditors must use the same credit terminology and expressions of rates. In addition to providing a uniform system for disclosures, the act is designed to

- Protect consumers from inaccurate and unfair credit billing and credit card practices

- Provide consumers with rescission rights

- Provide for rate caps on certain dwelling-secured loans

- Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

Impose limitations on home equity lines of credit and certain closed-end home mortgages determination of the Finance charge and the APR.

125. **Court Description:** Truth in Lending Act. The panel reversed the district court's dismissal of an action brought by a borrower against Bank of America, N.A., alleging claims under the Truth in Lending Act ("TILA") after the bank declared the borrower in default on a loan and initiated non-judicial foreclosure proceedings. If a creditor fails to make required disclosures under TILA, borrowers are allowed three years from the loan's consummation date to rescind certain loans. *15 U.S.C. § 1635(f)*. The borrower sent the bank notice of intent to rescind the loan within three years of the consummation date. The panel held that under *Jesinoski v. Countrywide Home Loans, 135 S. Ct. 790, 792 (2015)*, borrowers may affect rescission of such a loan simply by notifying the creditor of their intent to rescind within the three-year period from the loan's consummation date.

126. The panel further held that because TILA did not include a statute of limitations outlining when an action to enforce such a rescission must be brought, courts must borrow the most analogous state law statute of limitations and apply that limitation period to TILA rescission enforcement claims. The panel held that in Washington, the state's six-year contract statute of limitations was the most analogous statute. The panel rejected the district court's application of TILA's one-year statute of limitations for legal damages claims. The panel also rejected *HOANG V. BANK OF AMERICA* 3 the bank's argument that Washington's two-year catch-all statute of limitations should apply. Because the borrower brought this action within six years, the district court erred in dismissing the TILA claim as time barred.

127. The panel held that the district court improperly denied the borrower leave to amend the complaint. The district court made its determination based on its determination that amendment would be futile because the claims were time- barred. The panel held that because the borrower's TILA rescission enforcement claim was not time-barred, an amendment by the borrower would not be futile. https://law.justia.com/cases/federal/appellate-courts/ca9/17-35993/17-35993-2018-12-06.html

It is clear that Defendants intended to exploit the Plaintiff special disadvantage and deny Plaintiff their superior rights to subject property.

## BREACH OF FIDUCIARY DUTY

Plaintiffs re-allege and incorporates herein by reference all previous paragraphs as though fully set forth herein.

**Breach of full Disclosure:**

        a. Breach of good faith and fair dealing;

        b. Misuse of superior or influential position;

        c. Misuse of superior knowledge; and

        d. Failure to act in another's best interest

109.    Sureties pledged a security agreement via a constructive Deed of Trust whom designated Mortgage Electronic Registration System, Inc., nominee and beneficiary under the constructive trust [silent].

110.    Defendant Mr. Cooper failed to disclose to the Sureties that they were not the legitimate creditor but more accurately were account debtor in the accommodated table funded transaction with Mr. Cooper, Asset-Backed Certificates Trust.

111.    Defendant Mr. Cooper having only a personal property interest over the real property collateral failed to meet their fiduciary duty to release and satisfy the real property lien "Deed of Trust" and the beneficial security interest (personal property) therein after receiving payment for [all] sums represented by the Defendants' Accommodated .

112.    Prior to, and unknown to Sureties, Defendant Mr. Cooper for payment rendered through a service release premium from Mr. Cooper divested itself of the Accommodated Note but did not comply with the covenants of the Constructive Deed of Trust, specifically, "Payment of all sums secured by this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument."

113.    Mr. Cooper's acting not in the best interest of the grantor of the constructive Deed of Trust failed to adhere to their Fiduciary Duties; Mr. Cooper was to release and satisfy the security instrument in order for the Plaintiffs to maintain clear and marketable title. As a result of its failure to comply with the Constructive Deed of Trust, Defendants caused a cloud on the Plaintiffs' superior claim to title. As a result, Plaintiffs were harmed.

114.    Mr. Cooper never divulged to plaintiffs that they were not loaning anything. Plaintiffs were never informed that they were exchanging a Promissory Note (**which has a real cash value**) that was appropriated to fund the  implicit loan. Plaintiffs were led to assume that they were loaning them their own, or other people's money, which Plaintiffs have established as false. Mr. Cooper blatantly concealed this fact. If plaintiff's were misinformed, according to contract law, the agreement is null and void due to *"Non-Disclosure."*

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

115.    Contract law states clearly that when an agreement is made between two parties, each must be given full disclosure of what is transpiring. An agreement is not valid if either party conceals pertinent information.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-alleges and incorporate herein by reference all previous paragraphs as though fully set forth herein.

116.    Generally, one must prove the following to bring a legally sufficient claim of Intentional infliction of emotional distress.

 a.  That Defendants conduct was outrageous;

 b.  That the Defendants intended to cause Plaintiff emotional distress;

 c.  The Plaintiffs suffered severe emotional distress; and

 d.  That Defendants conduct was substantial factor in causing severe emotional distress.


117.    The actions of Defendants, as set forth herein, have resulted in the Plaintiffs potential loss of the property.

This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

118.    Defendants, Mr. Cooper, conduct – fraudulently threats of foreclosing on a property if plaintiffs did not make payments in which they have no right, title, interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

119.    Such conduct was undertaken with the specific intent of inflicting emotional distress on the plaintiffs, such that plaintiffs would be so emotional distress and debilitated that they would be unable to exercise legal rights in the property; The right to title of the property, the right to cure the alleged default, right to verify the alleged debt that defendant, Mr. Cooper attempting to collect, and write to clear title to the property such that the said title will regain its marketability and value.

120.    At the time defendants Mr. Cooper were not acting in good faith while attempting to collect the subject debt. Defendants, Mr. Cooper committed the acts set forth above with complete; Utter and reckless disregard of the probability of causing homeowner to suffer severe emotional distress.

121.    As an actual or proximate cause of defendants, Mr. Cooper, claim of the right to foreclose on Plaintiffs home, the plaintiffs have suffered severe emotional distress, including but not limited to the lack of sleep, anxiety, and depression.

122.    Plaintiffs did not default but with the defendants outrageous conduct, plaintiff have been living under the constant emotional nightmare of losing the property if payments weren't made to the defendant who is not entitled to collect.

123.    As a proximate cause of defendants conduct, plaintiffs have experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at his place of employment.

124.    The Defendant, Mr. Cooper as herein described, was so vile, base, contemptible, miserable, ratchet, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiffs is therefore entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conduct.

125.    In sum, Defendant(s) still continues to breach Standing Laws and Statues, according to Supreme Court Standing 15 U.S. Code § 6801(a), *"It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers nonpublic personal information." Notwithstanding §6801(b)(3)... Defendant continued to breach Supreme Court Standing by violating Plaintiff information to Third Party, 15 U.S. Code § 6802 (a)(b)(1)(B)(C)(2).*

**DECLARATORY RELIEF**

126.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

127.    Plaintiffs incorporates therein by reference as though has been fully set, for each and every allegation contained herein.

128.    An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove, regarding his respective rights and duties in the subject note(s) and security instrument. Plaintiff requests a judicial determination of the rights, obligations and interest of the parties with regard to the subject property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the subject property.

129.    Plaintiffs should be the equitable owner of the Subject Property which has the following legal description:

> Lot No. 19 of said Township and further described as follows: Commencing at an iron pin (found) at the intersection of the centerlines of South Ridge Road (State Route 84) and River Road;
> Thence North 53° 35' 22" East, along the centerline of South Ridge Road, 648.46 feet to a point and the principal place of beginning;
> Thence continuing in the same direction, along the centerline of South Ridge Road. 180.00 feet to a point;
> Thence South 36° 24' 38" East, perpendicular to South Ridge Road, passing through an identified iron pin (set) in the Southerly line of South Ridge Road, also passing through an iron pin (set) at 219.7 I feet, a total distance of 238.83 feet to a point in a Northerly line of lands deeded to David and Roberta Adams in Volume 844, Page 150, Lake County Official Records, said point being near the

center of a creek;
Thence South 53° 38' 11" West, along Adams' North line, 133.97 feet to an iron
pin (found) in a Northwest corner of said Adams' lands;
Thence South *45° 44' 21"* West, 46.46 feet to an identified iron pin (set);

Thence North 36° 24 38" West, perpendicular to South Ridge Road, passing
through an iron pin (set) at 23.97 feet, and passing through an identified iron pin
(set) in the Southerly line of South Ridge Road, a total distance of 245.07 feet to
the principal place of beginning and containing 0.990 acres of land but subject to
all highways.
Being a parcel of land divided out of lands deeded to David and H. Russell Adams
in Volume 342, Page 1151, Lake County Official Records. Pursuant to a survey
done in October 1987 by Bernard D. Westfall, P.S. Ohio #6634, A'Terra
Engineering and Surveying, Inc., Painesville, Ohio.
*Permanent Parcel No.:* 03-A-0 10-0-00-046-0
*Prior Instrument Reference:* 2021RO18756

*Property Address:  2850 South Ridge Road, Perry, Ohio 44081*

130.     Plaintiffs seeks to quiet title as of the date of the filing of this complaint.  This is an *in rem*
proceeding pursuant to Ohio Statutes Section 5303.01 directed against Plaintiffs property within the
boundaries of Lake County, Ohio. By virtue of a Note and Mortgage dated  June 20, 2019 / March 10,
2020 and filed for record, recorded in (See Property description at ¶ 130. Plaintiffs purchased the subject
property and gave a Note and Mortgage in favor of CrossCountry Mortgage. Plaintiffs seeks a judicial
declaration that the title to the subject property is vested in Plaintiffs alone and that the defendant be
declared to have no interest estate, right, title or interest in the Subject Property and that the Defendants,
their agents and assigns, be forever enjoined from asserting any estate, right, title or **interest in the
Subject Property subject to Plaintiff's rights.**

## ASSIGNMENT OF MORTGAGE

131.     Plaintiffs re-alleges and incorporate herein by reference all previous paragraphs as though fully
set forth herein. Generally, one must prove the following to bring a legally sufficient claim of Bifurcation
amongst others.

132.     Plaintiff's has seen numerous times, in numerous cases, a Homeowner/borrower/defendant and
plaintiffs (Homeowner) precluded from raising any issues relating to a defective assignment of mortgage
(AOM).    This language, or similar, is frequently uttered by the court in a final order denying the
Homeowner has standing to challenge an assignment of mortgage, and also usually granting summary
judgment to plaintiffs bank, "Defendant is not a party to the contract, or a 3rd party beneficiary, and
therefore  has no standing to challenge the validity of the assignment."

133.     One case frequently cited by banks to support such rulings in the past years is *Livonia Property
Holdings, L.L.C., v. Farmington Road Holdings, L.L.C., 717 F.Supp.2d 724 (E.D.Mich. 2010)*, stating

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

"Borrower disputes the validity of the assignment documents on several grounds outlined above. But, as a non-party to those documents, it lacks standing to attack them."

134.   It is significant that the same court held differently two (2) years later in another case. "It is true that the _Livonia Properties_ opinion contains the statement that "there is ample authority to support the proposition that 'a litigant who is not a party to an assignment lacks standing to challenge that assignment, '" _Livonia Properties, 399 F. App'x at 102 (quoting Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 717 F.Supp.2d 724, 736-37 (E.D. Mich. 2010))_; but when read carefully the case does not stand for such a general and unqualified position. The Court believes, therefore, that _Livonia Properties_ does not compel the conclusion that a foreclosure plaintiffs can never attack the foreclosure by challenging the validity of an underlying assignment." _Talton v. BAC Home Loans Servicing LP, 839 F.Supp.2d 896 (**E.D.Mich. 2012**)_.

135.   Before making a mere layman's attempt at providing answer(s) to potential questions raised above I'd first like to cover a bit of history in regard to conveyance of interests in, and ownership of, real estate generally.  It is long standing, and well established, that someone **ALWAYS** owns land, and that such ownership be a matter of public knowledge, of the public record.

### Conveyance Before Writing – Livery of Seisin

### Black's Law Dictionary (8th Edition, 2004) offers the following

_136_   _"Livery of seisin. Hist. The ceremony by which a grantor conveyed land to a grantee. • Livery of seisin involved either (1) going on the land and having the grantor symbolically deliver possession of the land to the grantee by handing over a twig, a clod of dirt, or a piece of turf (called livery in deed) or (2) going within sight of the land and having the grantor tell the grantee that possession was being given, followed by the grantee's entering the land (called livery in law). See SEISIN. [Cases: Deeds 21.C.J.S. Deeds §§ 12–13.]"_

_137_   _"[W]e may now pause to wonder how transfer of these potentially infinite interests was accomplished. Without a modern system of land records, it would be desirable that the transfer be effected with sufficient ceremony not only to mark itself indelibly in the memories of the participants, but also to give notice to interested persons such as the mesne lord above the transferor. The central idea was to make ritual livery (meaning 'delivery,' from the Old French livrer) of seisin (meaning, roughly, 'possession,' from the Old French saisir or seisir)._   "Assignments of the Mortgage Loans to the Trustee (or its nominee) will not be recorded in any jurisdiction but will be delivered to the Trustee in recordable form, so that they can be recorded in the event recordation is necessary in connection with the servicing of a Mortgage Loan."

138.   Plaintiffs pray that this court does not allow into evidence '_retroactive Mortgage Loan Assignments_, back-dated or retroactive dates.' Being respectful of the court, the court may like to request

the Trustee to explain why they were, are acquiring nonperforming loans and whether such acquisition was a violation of the trustee's fiduciary duty to the Trust.

## APPENDIX

.More and more courts are agreeing that the banks "inside" the PSA do not have legal standing (they have no skin in the game and so cannot show the necessary "injury in fact"), are not "real parties in interest" (they cannot show that they followed the terms of the PSA or are otherwise "entitled to enforce" the note) and that there are real questions of whether any securitized mortgage can ever be properly perfected.

The banks' weakness is exposed most often in bankruptcy courts because it is there that they have to show their cards and explain how they claim a legal right, rather than the "of record" right, to foreclose the mortgage. More and more courts are recognizing that, without proof of ownership of the underlying note, holding a mortgage means nothing.

The most recent crack in the Banks's position is evidenced by the federal Eight Circuit Court of Appeals' decision in In Re Banks, No. 11-6025 (8th Cir., Sept. 13, 2011). In Banks, a bank attempted to execute a foreclosure within a bankruptcy case. The bank had a note payable to the order of another entity; that is, the foreclosing bank was "Bank C" but had a note payable to the order of "Bank B" and endorsed in blank by Bank B. The bank, Bank C, alleged that, because the note was endorsed in blank and "without recourse," that it had the right to foreclose. The Court held that this was insufficient to show a sufficient chain of title to the note, reversed the lower court's decision and remanded for findings regarding when and how Bank C acquired the note.

Plaintiffs identified his defense concerning the banks fraud. In order for a mortgage, deed of trust or promissory note to be valid, it must have what is known as "perfection" of the chain of title. In other words, there must be a clear, unambiguous record of ownership from the time you signed your papers at closing, to the present moment. Any lapse in the chain of title causes a "defect" in the instrument, making it invalid.

In reality, lapses occur frequently. As mortgages and deeds began to routinely be bought and sold, the sheer magnitude of those transfers made it difficult, costly and time-consuming for institutions to record every transaction in a county records office. But in order to have some method of record-keeping, the banks created the Mortgage Electronic Registration System (MERS), a privately held company that tracks

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

the servicing rights and ownership of the nation's mortgages. The MERS holds more than 66 million American mortgages in its database.

In sum, The loan that is the subject of this examination was granted on March 10, 2020. The parties in the promissory note are Jessica M. Amato, the borrower, and CrossCountry Mortgage, LLC, the originating lender. It is a Fixed Rate Note with a term of 30 years to mature on April 1, 2050. The Mortgage was executed on March 10, 2020. The parties are Jessica M. Amato, the borrower, John E. Prokop, the co-borrower, CrossCountry Mortgage, LLC, the originating lender, and MERS which is named as nominee for the lender and mortgagee. This instrument secures the debt of the borrowers to the lender including interest thereof. It was recorded in Lake County on March 17, 2020. The Fixed Rate Note has not been endorsed. The Mortgage has not been assigned.

The burden of proof lies with CrossCountry Mortgage, LLC and MR. COOPER GROUP to prove that it has in its possession both the unendorsed Fixed Note and the unassigned Mortgage..

## **PRAYER**

**WHEREFORE PREMISES CONSIDERED** as Prayer for Relief, and for the foregoing reasons, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiffs be awarded judgment:

- Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and / or to sell the subject property;

- Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiffs and against Defendants and all claiming by, though, or under them;

- Defendant return the GENUINE ORIGINAL PROMISSORY NOTE and ALL MONEY PAID [by Plaintiffs to Defendants, with a full disclosure of accounting of such] to Plaintiff forthwith;

- If Defendant is not able to return the GENUINE ORIGINAL PROMISSORY NOTE to Plaintiffs forthwith then Defendant is therefore admitting to Defendant's unlawful attempt to convert real property without cause and/or right.

- Defendant present to Plaintiffs and this Court and Affidavit stipulating that Defendant has NO RIGHTS to the real property in question.

- Defendant returns DEED and all other documents pertaining to ownership of real property in question to Plaintiffs.

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

- If Defendant does not STATE THE CLAIM UNDER PENALTY OF PERJURY that Defendant is the CREDITOR in this instant matter, Defendant agrees to accept Judgment by Default in favor of Plaintiffs.

- If Defendant does STATE THE CLAIM UNDER PENALTY OF PERJURY and Defendant is the CREDITOR in this instant matter, Defendant agrees to deliver acknowledgement of such forthwith to the S.E.C. and the I.R.S.

- A refund of any wrongfully or improperly collected fees and payments to Defendants to which it had no right;

- Pre-and post-judgment interest at the maximum rate allowed by law;

- Attorney's fees;

- Monetary relief over $100,000 but not more than $2,000,000.00;

- Issue a Temporary Restraining Order against Defendants prohibiting Defendants from pursuing a foreclosure on said property and for this Court to set a Show Cause Hearing why the TRO should not be converted to a Temporary Injunction;

  and

- Such other and further relief at law and / or in equity to which Plaintiffs may be justly entitled including but not limited to damages within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as are allowed by law.

- Withstanding Judicial Action: Collector(s) produce admissible evidence / Competent fact witnesses

b. Dated: ___14___ February, 2024

Jessica Marie Amato, Trustee, sui juris
c/o 2850 S. Ridge Rd.
Perry, Ohio [44081] 9998

**EXHIBITS**
Exhibit A:
Exhibit B:
Exhibit C:

KELLY MCGARRY
Notary Public, State of Ohio
My Commission Expires: 7-27-25
Recorded in Lake County

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing is being forwarded this _14_ th day of February 2024, the foregoing was served on Defendants by way of certified mail return receipt requested, to all parties naming MR. COOPER GROUP MORTGAGE COMPANY, LLC, certified no. 7021 2720 0002 8670 0949 and its Third-Party Agents, with a known address of: 121 BYPASS LEWISVILLE, TX 75067
Plaintiff has met its burden of Fed. R. Civ. P. 4(h) concurrent with Rule 4(l).

By: Jessica-Marie: Amato
All Rights Reserved Without Prejudice,
Void Where Prohibited by Law

KELLY MCGARRY
Notary Public, State of Ohio
My Commission Expires: _7/27/25_
Recorded in Lake County

---

**PLAINTIFF'S COMPLAINT FOR MORTGAGE FRAUD**